In the Estate of Samuel G. GRAHAM, Deceased; Missouri Department of Social Services, Division of Medical Services, Appellant,

v.

Connie KIRKWEG, Personal Representative, Respondent.

No. WD 58839.

Missouri Court of Appeals,
Western District.

Sept. 4, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 2001.

Jennifer L. Barth, Jefferson City, for appellant.

David A. Yarger, Versailles, for respondent.

Before LOWENSTEIN, P.J., ULRICH J., and HANNA, Sr. J.

## OVERVIEW

LOWENSTEIN, Judge.

■ The Department of Social Services of the State of Missouri (Department) appeals from the judgment of the Probate Court of Miller County in favor of Connie Kirkweg, personal representative of the Estate of Samuel G. Graham (Estate), on the Department's claim seeking reimbursement under § 473.398, RSMo 2000[1] and § 473.399, for Medicaid expenditures paid on behalf of the decedent, Samuel, and his wife Doloris, who had predeceased him. These statutes, as pertinent here and set out *infra*, require the State to recover from a person's estate the amount of care and/or services provided by the State.[2] The Department argues that the probate court erred in granting the Estate's motion for a directed verdict because the Department made a *prima facie* case in that its exhibits on the testimony of the Department's witnesses constituted substantial and competent evidence of moneys expended by the State on behalf of Samuel and Doloris Graham during their lifetimes.

The two statutes that control the allowance of the claim for money expended on behalf of Doloris and Samuel against the Samuel Graham Estate are set out below.[3]

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. The purpose of Medicaid is to provide medical assistance to needy persons whose income and resources do not meet their needs for health care. Medicaid is federally funded and administered by the states according to approved programs. *Estate of West v. Moffatt*, 32 S.W.3d 648, 651 (Mo.App.2000).

3. Section 473.398 reads as follows:
   1. Upon the death of a person, who has been the recipient of aid, assistance, care, services, or who has had moneys expended on his behalf by the department of health, department of social services, or the department of mental health, or by a county commission, the total amount paid to the decedent or expended upon his behalf after January 1, 1978, shall be a debt due the state or county, as the case may be, from the estate of the decedent. The debt shall be collected as provided by the probate code of Missouri, chapters 472, 473, 474 and 475, RSMo.
   2. Procedures for allowance of such claims shall be in accordance with this chapter, and such claims shall be allowed as a claim of the seventh class under subdivision (7) of section 473.397....
   4. Claims consisting of moneys paid on the behalf of a recipient as defined in 42 U.S.C. § 1396 shall be allowed, except as provided in subsection 3 of this section, upon the showing by the claimant of proof of moneys expended. Such proof may include but is not limited to the following items which are deemed to be competent and substantial evidence of payment:
      (1) Computerized records maintained by any governmental entity as described in subsection 1 of this section of a request for payment for services rendered to the recipient; and
      (2) The certified statement of the treasurer or his designee that the payment was made.....

Section 473.399 reads as follows:
1. As used in this section, the following terms mean:
   (1) "Assistance", funds expended by a state agency to or on behalf of a person in the form of aid, care, or services, except that for the purposes of this section, aid to families with dependent children shall not be considered assistance;

In this appeal by the plaintiff of a directed verdict against it, the ultimate question is whether the Department made a submissible case in probate court on its claim where it had to prove it provided funds for assistance on behalf of the Grahams. Because this court finds that the Department made a submissible case to recover medical benefits paid on behalf of Samuel and Doloris Graham under §§ 473.398 and 473.399, the judgment of the probate court is reversed, and the case is remanded with directions for a new trial.

### Facts

Samuel Graham died testate on August 2, 1999. The respondent, Connie Kirkweg, is the personal representative of his estate. The Department timely filed a claim against Graham's estate asserting the estate owed a total of $29,457.95 to the Department for Medicaid benefits paid on behalf of Samuel Graham, pursuant to § 473.398, and on behalf of Doloris Graham, his predeceased spouse, pursuant to § 473.399.

At the hearing on its claim, the Department's first witness was Marsha Hickey, one of its income maintenance supervisors. She testified that she managed a group of employees of the Department who determine eligibility for public assistance programs. During her testimony she identified exhibit 1, which included an application for benefits on behalf of Samuel and Doloris Graham, an eligibility statement, and a notice of a Department case action sheet. She testified that she was the custodian of the records and that the documents were kept in the ordinary course of business. Hickey also described how individuals are identified in the system by departmental client numbers (DCN) which are assigned when an individual makes an application for benefits, and testified and identified Samuel's and Doloris' DCN numbers. The Estate's objection that Dickey was not the custodian of the records was overruled. Exhibit 1 was admitted.

James Lake also testified on behalf of the Department. He was employed by the Department's Division of Medical Services as a cost recovery analyst. He testified that he worked on the estate recovery program. When a deceased Medicaid recipient has an estate, he prepared the doc-

(2) "Obligor estate", the estate against which an obligation under this section arises;

(3) "Recipient", a person to whom or on whose behalf assistance is provided;

(4) "State agency", the department of social services, department of health and department of mental health of the State of Missouri.

2. For purposes of this section, the providing of assistance shall create an obligation which may be recovered by filing a claim in the probate division of the circuit court against the decedent estate of the spouse of the deceased recipient upon such spouse's death.... The amount of the state debt shall be the full amount of assistance without interest provided to the recipient during the marriage of such recipient and spouse; provided that the liability of the obligor estate shall not exceed the value of the combined resources of the recipient and the spouse of the recipient on the date of death of the recipient.

3. The state agency providing the assistance may initiate a claim on the debt against the obligor estate.

4. The obligor estate may assert a defense to the state agency's claim that more than two years prior to the providing of assistance, the recipient voluntarily abandoned the spouse.

5. An obligor estate shall have the right of setoff against the state debt for any amounts recovered by the state agency from the estate of the deceased recipient pursuant to section 473.398.

6. Claims shall not be filed under this section when collection of the state debt would be contrary to federal statutes for assistance programs in which federal funds are received.

umentation and applicable claims history information in preparation for the Department to file a claim to recover Medicaid expenditures paid on behalf of that person. Lake brought claim documentation (exhibits 2 and 3) to substantiate the Department's claim that public assistance benefits were paid on behalf of the Grahams, which included a billing statement for both Samuel and Doloris Graham, remittance advices, and check registers. In essence, exhibit 2 contained bills from medical providers of the Grahams, and exhibit 3 contained check registers showing the State's payment on those bills. Lake described each item in exhibits 2 and 3 in detail, as well as the Medicaid claim process the Department follows in determining the amount of benefits that are paid to providers on behalf of a recipient. Lake testified, without objection, that the total amount of claims paid for both Samuel and Doloris Graham was $29,457.95. Lake also testified that he reviewed the claim documentation for accuracy by comparing Samuel's and Doloris' billing statements to their recipient history profiles.

During Lake's testimony, the Estate objected to the introduction of exhibits 2 and 3 on several grounds. After a lengthy discussion between the parties and the court concerning the objections, the probate court *overruled* the Estate's objections. The probate judge never expressly stated that the exhibits were admitted and received; however, when he told the Department's attorney to continue she replied, "well I believe the exhibits 2 and 3 have already been admitted, so that concludes my questions for [Mr. Lake] ." The probate judge replied, "very well," and the Estate made no response.

After the Department rested, the Estate moved for a directed verdict at the close of the Department's case arguing that: 1) there had been no compliance with § 493.398; 2) exhibits 2 and 3 had not been admitted into evidence; and 3) there was no proof of payment for anything included in the documents. The trial judge took the case under advisement and, after reviewing the parties briefs and the evidence, entered a judgment granting the Estate's motion for a directed verdict. The Department appeals.

## Standard of Review

In reviewing a directed verdict granted for defendant, an appellate court reviews the evidence and permissible inferences most favorably to the plaintiff, disregards contrary evidence and inferences and determines whether plaintiff has made a submissible case. *Schumacher v. Barker*, 948 S.W.2d 166, 168 (Mo.App.1997); *Estate of Hayes*, 941 S.W.2d 630, 632 (Mo. App.1997). Directing a verdict is a drastic measure, therefore, a presumption is made in favor of reversing the trial court's judgment sustaining a motion for directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as a result. *Schumacher*, 948 S.W.2d at 168; *Thong v. My River Home Harbour, Inc.*, 3 S.W.3d 373, 377 (Mo.App. 1999).

## I.

The Department argues in its sole point on appeal that the probate court erred in granting the Estate's motion for directed verdict because the Department made a *prima facie* case, in that exhibits 1, 2 and 3 and the testimony of its witnesses constituted substantial and competent evidence of moneys expended by the Department on behalf of Samuel and Doloris Graham during their lifetimes.

The Department argues that exhibits 2 and 3 qualify as business records under § 490.680. The Estate, on the other hand,

argues as it did in the motion for directed verdict that exhibits 2 and 3 were never offered nor received in evidence, and that even if they were, the Department failed to present credible or substantial evidence for exhibits 2 and 3 to qualify as business records under § 490.680.

The first issue is whether exhibits 2 and 3 were *admitted* into evidence by the probate court. During Lake's testimony, he explained exhibits 2 and 3 in detail. At the end of Lake's testimony, the Department's counsel stated, "Okay. At this time I'd like to move to introduce Claimant's exhibits 2 and 3 into evidence as business records under the business exception to the hearsay rule ." The Estate's counsel objected to the admission of the exhibits on the grounds that Lake was not the custodian, that there was not proof that the exhibits were "entered at the time in the regular course of business, and that they do not reflect what had been actually paid." After a lengthy discussion between counsel and the trial judge, the following colloquy occurred:

> *Trial Court:* Okay. Objection is overruled. You may continue, ma'am.
>
> *Department counsel:* Well, I believe the Exhibits 2 and 3 have already been admitted, so that concludes my questions for this witness.
>
> *Trial court:* Very well. Mr Yarger?

Keeping in mind the review here is solely to determine whether the appellant made a submissible case on its claim, a brief discussion of the business records rule of evidence is in order.

The Estate contends: 1) Lake was not the custodian of the records because he had no contact with the records prior to preparing them for the Department to file its claim; and 2) exhibits 2 and 3 were not made in the regular course of business at or near the time of the act, condition or event because they were made solely for the purpose of filing the claim.

A document qualifies as a business record under § 490.680 if three conditions are met: (1) either the custodian of records or other qualified witness testifies to the identity and mode of preparation of the record; (2) the custodian or qualified witness testifies that the record was made in the regular course of business, at or near the time of the act, condition or event; and (3) the court finds admission of the record is justified by the sources of information and the method and time of preparation of the record. § 490.680.

According to *Estate of West v. Moffatt,* *supra:*

> Where a business regularly employs electronic computer equipment to enter and store its business records, printouts of the records are admissible under section 490.680 if, as the Act requires, the entries reflected are made in the regular course of business at or reasonably near the time of the occurrences of the events they record, and the trial court is satisfied that the sources of information and mode and time of preparation indicate trustworthiness, and hence justify admission. A witness is qualified to testify regarding a business record if he or she has sufficient knowledge of the business operation and methods of keeping records of the business as to give the records probity.

32 S.W.3d at 653 (citation omitted).

■ In this case, Lake was qualified to testify about exhibits 2 and 3 because he had sufficient knowledge of the process and methods used by the Department when it filed a claim against a decedent's estate. Lake testified that after a deceased Medicaid recipient has been identified as having an estate, he prepares the documentation and applicable claims history information so the Department can file

a claim. He described and explained the claim documentation in exhibits 2 and 3 which included a billing statement for both Samuel and Doloris Graham, remittance advices, and check registers, as well as the Medicaid claim process the Department follows in determining the amount of benefits that are paid to providers on behalf of a recipient. Lake also testified, without objection, that he was the custodian of the claim documentation and that he had reviewed the claim documentation for accuracy by comparing Samuel's and Doloris's billing statements to their recipient history profiles.

Lake also testified that the information used to prepare the claim documentation was maintained by the Division of Medical Services in the normal and ordinary course of business. Although he had no personal knowledge of the records until he gathered them to support the Department's claim, he testified that the entries reflected in the documents were made at or near the time claims are received and paid to providers.

## II. Alternately, the Testimony of Lake was Sufficient For a *Prima Facie* Case

■ This court rules that even though the trial court never expressly declared exhibits 2 and 3 were admitted into evidence, that the colloquy set out on pages 7 and 8 of this opinion amounted to the admission of these records in evidence. The court overruled the Estate's objections, and the appellant's counsel expressed to the court an understanding that the documents had been admitted, and to hold now that the documents were not in evidence would be contrary to the actions of the court. This holding should in no way be interpreted to detract from counsel's duty to make sure submitted exhibits are admitted into evidence, but, here where the objections were properly overruled, and the counsel who offered the evidence received from the court an understanding that the matters were in evidence, the documents will be deemed admitted.

## A. Section 473.398—Claim for benefits paid on behalf of Samuel

■ The Department concedes that it did not use either of the methods described in § 473.398 [4] to prove its claim against Samuel's estate. The methods of proof promulgated in § 473.398, however, are not the exclusive methods permitted to prove the amount of money expended. *Dep't. of Soc. Servs. v. Ragsdale,* 934 S.W.2d 322, 324 (Mo.App.1996); *Pierce v. State of Missouri, Dep't. of Soc. Servs.,* 969 S.W.2d 814, 818 (Mo.App.1998) (Department's computer records detailing the amounts paid to the decedent or on his behalf, along with the testimony of the Department's estate recovery analyst and income maintenance case worker were sufficient to satisfy the Department's burden of proof in an action to recoup Medicaid benefits); *Estate of West,* 32 S.W.3d at 654 (Claim documentation exhibits that fail to satisfy the requirements under § 473.398.4 do not lack a proper foundation as they are not the exclusive methods permitted to prove the amount of money expended).

In *Ragsdale,* 934 S.W.2d 322, the Department filed a claim against the decedent's estate, seeking reimbursement for benefits the Department paid on behalf of the decedent. The trial court entered judgment in favor of the Department, and the decedent's estate appealed, arguing that there was no substantial evidence to support the judgment because the Department did not follow the two methods of proof set out in § 473.398.4, and it did not establish an adequate foundation for the

---

4. See note 2, *supra,* for the text of this statute.

admission of the computer records or treasurer's statement. *Id.* at 323–24. The court in *Ragsdale* determined that it was not necessary to address the merits of the estate's arguments because they "rest on the assumption that the only way for the State to establish its claim is by computerized records and the certified treasurer's statement." *Id.* at 323. The court stated that such an assumption, "overlooks the statutory language [in § 473.398.4] which provides that the claim 'shall be allowed' upon 'the showing by the claimant of the proof of moneys expended.' " *Id.* at 323–24. The Eastern District further held in *Ragsdale* that, "Even if the records are disregarded as exhibits, the analyst testified as to the amount the State had expended for decedent. That testimony, if believed, is sufficient to establish the 'moneys expended' for decedent as required by § 473.398.4." *Id.* at 324.

■ In this case, the Department had the income maintenance supervisor and an income recovery analyst testify. Their testimony as to bills and payment were in evidence. According to *Ragsdale,* 934 S.W.2d at 324, even if exhibits 2 and 3 were disregarded, if the analyst testified as to the amount the Department had expended, and it was believed, it would be sufficient evidence to establish that money was expended as required by § 473.398.4. In this case, note the following colloquy:

> *The Witness:* I haven't really added those together. Let me add them here real quick. $29,557.95. Excuse me.
> *Department's Counsel:* Do you believe, Mr. Lake, it could be $29,457—
> *The Witness:* Yeah. I'm sorry. I misadded there. It's 457.

As such, even if exhibits 2 and 3 had not been deemed admitted into evidence, under *Ragsdale,* Lake's testimony that the

Department expended $29,457.95 on behalf of Samuel and Doloris, was sufficient to establish money was expended as required by § 473.398.4.

### B. Section 473.399—Claim for benefits paid on behalf of Doloris Graham

■ The Estate contends that, even if this court found that exhibits 2 and 3 had been admitted into evidence, the exhibits did not provide substantial evidence of payment to constitute a *prima facie* case under § 473.399.[5] Specifically, the Estate argues that the Department failed to provide proof that Samuel and Doloris were married and proof of the "value of the combined resources of the recipient and the spouse of the recipient on the date of the death of the recipient." § 73.399.2. These arguments were not made in the motion for directed verdict. As stated *supra,* this court's review of a directed verdict is only to determine whether a submissible case has been made.

The primary purpose of §§ 473.398 and 473.399 is similar, to allow specified state agencies to recover funds expended on behalf of a deceased recipient. The exhibits deemed admitted in evidence were sufficient to avoid a directed verdict, but in any event, the testimony of the witness under *Ragsdale,* that the amount of money expended on behalf of the decedent is sufficient, equally applies to cases involving § 473.399.

The judgment is reversed, and the cause is remanded for trial.

All concur.

■

---

5. See note 3, *supra,* for the text of this statute.