In The Estate of Joanna STRAYER, Deceased, Ronald DeClue as Personal Representative of the Estate of Joanna Strayer, Respondent,

v.

STATE of Missouri, Department Of Social Services, Appellant.

No. WD 72707.

Missouri Court of Appeals, Western District.

April 19, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 2011.

Megan K. Fewell, Jefferson City, MO, for Appellant.

Robert J. Seek, Eldon, MO, for Respondent.

Before CYNTHIA L. MARTIN, P.J., JAMES EDWARD WELSH, and GARY D. WITT, JJ.

JAMES EDWARD WELSH, Judge.

The State of Missouri, Department of Social Services, MO HealthNet Division ("State") appeals the circuit court's judgment denying its claim against the estate of Joanna Strayer ("Estate") for reimbursement of Medicaid assistance funds that the State allegedly expended on Strayer's behalf. On appeal, the State contends that MO HealthNet's computerized records, standing alone, constituted sufficient evidence to entitle it to recover on its claim. We affirm.

Strayer died testate on July 19, 2005. Letters testamentary were issued in her estate, and Ronald DeClue was appointed personal representative of her estate. On March 3, 2009, the State filed a claim against the Estate in the amount of $52,931.33 for reimbursement of Medicaid benefits allegedly paid on Strayer's behalf during her lifetime.

At the subsequent claim hearing, the State noted that it had filed with its claim ten pages of computerized records from the MO HealthNet Division.[1] A business records affidavit was attached to the records. The records indicated that they were for the "Estate of Ann Strayer." The top of the first page of the records contained the line, "TOTAL AMT DUE: $52931.33." The remaining information in the records was divided into sections by providers and contained abbreviated headings and information below each heading.

The State offered no testimony or evidence explaining the data contained in the records. The State's attorney argued that the records conclusively established that the State had paid $52,931.33 in Medicaid benefits on Strayer's behalf.

In response, the Estate asked the court to deny the claim on the basis that the State failed to meet its burden of proof. The court took the matter under advisement and asked the parties to brief the issue. After receiving the parties' briefs, the court found that the State's evidence was insufficient and denied the claim. The State appeals.

Review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

In denying the State's claim, the circuit court first found that the State failed to prove that Ann Strayer, whose Medicaid benefits were the subject of the State's computerized records, was the same person as Joanna Strayer, the decedent. The court found that the computerized records made no reference to Joanna Strayer and that there was no other identifying information from which the court could conclude that the Ann Strayer in the records was, in fact, Joanna Strayer. Because there was "zero evidence" before the court that Joanna Strayer was ever known by any other name, the court found that the State failed to meet its burden of proof to recover on its claim. We agree.

Although the State contends that captioning its claim against the Estate as "In the Estate of: Ann (Joanna) Strayer"

---

1. Missouri participates in Medicaid through the MO HealthNet program. § 208.151.1, RSMo Cum.Supp.2010.

proved that Joanna Strayer was Ann Strayer, the State's self-serving caption was not evidence. The State also argues that it established that Joanna Strayer was Ann Strayer because the computerized records for Ann Strayer's estate showed a social security number. The State offered no evidence of Joanna Strayer's social security number, however, so there was no way to determine if the social security numbers were, in fact, the same. Next, the State claims that the computerized records showed that Ann Strayer's date of death and last place of residence were the same as those listed for Joanna Strayer in the personal representative's Application for Letters Testamentary. The computerized records for Ann Strayer did not list a date of death or last place of residence. Thus, the State's claim regarding what the computerized records showed is based upon its interpretation of the data in the records and not upon any interpretation that was in evidence before the circuit court.

Finally, the State argues that the Estate presented no evidence that Joanna Strayer was not Ann Strayer. The State had the burden of proof, however, and the Estate did not stipulate that Joanna Strayer was Ann Strayer. Even though the Estate presented no contradictory evidence, the court, as the trier of fact, did not have to believe the State's assertion. *See White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010). As evidenced by the court's findings, it did not. Because the State failed to make its *prima facie* case that Joanna Strayer was Ann Strayer, the Estate had no burden of proving otherwise. The circuit court did not err in denying the State's claim on this basis.

█ The circuit court also denied the State's claim on the basis that the State's

computerized records did not satisfy the standard set forth in section 473.398.4, RSMo Cum.Supp.2010.[2] Section 473.398 allows the State to recover public assistance funds, including Medicaid benefits, which were expended on the decedent's behalf during the decedent's lifetime. Section 473.398.4 sets out the type of proof necessary to establish such a claim against the decedent's estate:

4. Claims consisting of moneys paid on the behalf of a participant as defined in 42 U.S.C. 1396 shall be allowed ... upon the showing by the claimant of proof of moneys expended. Such proof may include but is not limited to the following items which are deemed to be competent and substantial evidence of payment:

(1) Computerized records maintained by any governmental entity ... of a request for payment for services rendered to the participant; and

(2) The certified statement of the treasurer or his designee that the payment was made.

The court found that the computerized records were insufficient because they did not indicate that the claim consisted of moneys paid on behalf of a Medicaid recipient as defined by 42 U.S.C. § 1396. The court stated that it was "left to speculate as to what the random numbers set forth in the bare records represent." The court noted that the Estate was "not obligated to prove the negative" and that the State failed to meet its burden of proof.

█ On appeal, the State contends that the computerized records were sufficient to make a *prima facie* case for recovery pursuant to section 473.398.4, and, because the Estate presented no evidence to contradict the computerized records, the State was entitled to judgment in its favor.

2. To review this issue, we will assume for the sake of argument that the computerized records did, in fact, refer to Joanna Strayer.

Like the State's argument regarding whether Joanna Strayer was, in fact, the Ann Strayer listed in the records, the State's argument on this issue rests upon the mistaken belief that the court had to believe that the computerized records showed what the State represented they did-even though the State presented no evidence to support its assertion. "When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted evidence." *White,* 321 S.W.3d at 305 (citing *Bakelite Co. v. Miller,* 372 S.W.2d 867, 871 (Mo.1963)). "If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." *Id.* " 'Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it.' " *Id.* (citation omitted).

The State had the burden of proving its claim for recovery. The Estate did not stipulate to the amount of Medicaid benefits expended on Strayer's behalf. It was the court's prerogative to believe or disbelieve the State's evidence even though the Estate presented no contrary evidence. Clearly, as evidenced by the court's findings, it did not believe that "the random numbers set forth in the bare records" represented the amount of Medicaid benefits expended on Strayer's behalf.

Even if the circuit court had found the computerized records to be probative of the amount of Medicaid benefits expended on Strayer's behalf, the issue remains as to whether the computerized records were sufficient, by themselves, to entitle the State to recover under section 473.398.4. To resolve this issue, we must interpret the statute. When interpreting a statute, we are to ascertain the legislature's intent by giving the statute's language its plain and ordinary meaning. *Pub. Sch. Ret. Sys. of Mo. v. Taveau,* 316 S.W.3d 338, 349

(Mo.App.2010). "If statutory language is not defined expressly, it is given its plain and ordinary meaning, as typically found in the dictionary." *Derousse v. State Farm Mut. Auto. Ins. Co.,* 298 S.W.3d 891, 895 (Mo. banc 2009). Where the legislature's intent is unambiguous from the language's plain and ordinary meaning, we are bound by that intent and cannot resort to any statutory construction. *Taveau,* 316 S.W.3d at 349.

Looking at the language of section 473.398.4, we note that the legislature says in the first sentence that a claimant, in this case, the State, is entitled to recover Medicaid benefits from an estate upon a showing of "proof of moneys expended." In the second sentence, the legislature provides guidance as to what constitutes sufficient "proof of moneys expended." § 473.398.4. Specifically, the legislature says that such proof "may include but is not limited to" the items listed in subdivisions (1) and (2), and these items "are deemed to be competent and substantial evidence of payment." *Id.* The items listed in subdivision (1) are the computerized records maintained by a governmental entity of a request for payment of services rendered to the participant. § 473.398.4(1). The item listed in subdivision (2) is the certified statement of the treasurer or his designee that the payment was made. § 473.398.4(2).

Pursuant to the plain and ordinary meaning of the language in the second sentence of section 473.398.4, to prove moneys expended upon a decedent's behalf, a claimant may present computerized records showing a request for payment and a certified statement showing payment was made. We interpret the phrase "[s]uch proof may include but is not limited to" to mean that these items of documentary evidence are not the exclusive way for a claimant to prove moneys expended, but that other forms of evidence-

such as testimony or other documents-showing a request for payment for services rendered and certifying that payment was made are also sufficient.

The State acknowledges that it offered only the computerized records maintained by MO HealthNet and no other documentary or testimonial evidence certifying that payment was made. Nevertheless, the State argues that the records conclusively prove the amount of money paid on Strayer's behalf. The State bases this argument on its own interpretation of the computerized records. There is no evidence in the record to support this interpretation, however. As we previously noted, the State offered no evidence to the circuit court as to what the data in the computerized records represented.

The State next contends that it satisfied section 473.398.4 because the statute requires only that a claimant present *either* the information described in subdivision (1) *or* the information described in subdivision (2). The State argues that the word "and" connecting subdivisions (1) and (2) really means "or," so a governmental entity's computerized records showing a request for payment for services rendered and a certified treasurer's statement showing that payment was made "are two different but equally sufficient methods available for the State to prove the amount of money expended on behalf of a decedent." We disagree.

The common first definition of the word "and" in the dictionary is " 'along with or together with' or words of comparable meaning." *Burns v. Smith,* 303 S.W.3d 505, 511 (Mo. banc 2010) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED, MERRIAM WEBSTER 80 (1993); BLACK'S LAW DICTIONARY 86 (6th ed.1991); WEBSTER'S NEW WORLD COLLEGE DICTIONARY, MERRIAM WEBSTER 51 (3d ed.1996)). Thus, the use of the word "and" in section 473.398.4 indicates

that the legislature intended that the items in subdivision (1), computerized records (or their equivalent) showing a request for payment of services, *along with or together with* the item in subdivision (2), the certified statement of the treasurer or his designee (or its equivalent) showing that the payment was made, constitute competent and substantial evidence of payment. *See id.* "This dictionary-directed interpretation permits the word "and" to fulfill its common role as a logical connective needing all operands." *Id.*

The State is correct that the word "and" can be construed to mean "or." *See, e.g., City of St. Louis v. Consol. Prods. Co.,* 185 S.W.2d 344, 346–47 (Mo.App.1945) (holding that construing "and" to mean "or" was consistent with ordinance's purpose of promoting safety and welfare of community and was consistent with other language in statute where "or" was expressly used). As the Missouri Supreme Court explained, however, construing "and" to mean "or" is appropriate only in certain circumstances:

> "This construction ... is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake."

*Hawkins v. Hawkins,* 511 S.W.2d 811, 813 (Mo.1974) (citation omitted). We find no "strong reasons" to interpret "and" to mean "or" in section 473.398.4, particularly because the information in each of the subdivisions is distinctly different. Subdivision (1) is proof of what providers billed the State for services rendered to participants, while subdivision (2) is proof of what the State actually paid to providers. To interpret the statute as saying that the

State can recover based upon only proof of what providers billed without proof of what the State actually paid would be absurd, as the amounts billed are often reduced or even denied.

Nevertheless, the State argues that several cases have interpreted section 473.398 as providing two different but equally sufficient ways of proving moneys expended because they refer to subdivisions (1) and (2) as "methods of proof," *In re Estate of Graham,* 59 S.W.3d 15, 21 (Mo.App.2001); "two expressed methods" of proof, *In re Estate of Newman,* 58 S.W.3d 640, 646 (Mo.App.2001); "two forms of evidence," *Estate of West v. Moffatt,* 32 S.W.3d 648, 654–55 (Mo.App.2000); and "methods of proof," *Dept. of Soc. Servs. v. Ragsdale,* 934 S.W.2d 322, 324 (Mo.App.1996).

We do not find these cases dispositive. The issue in these cases was not whether providing the information contained in either subdivision (1) or subdivision (2), alone, was sufficient to satisfy section 473.398.4, but, rather, whether using alternative methods of proof, such as other documents or the testimony of Department of Social Services employees, was sufficient to satisfy section 473.398.4. Indeed, in each of these cases, the State offered the information described in both subdivisions (1) and (2), i.e., proof of what providers billed and proof that payment was made; it simply did not do so strictly by way of the documents listed in subdivisions (1) and (2). *See Graham,* 59 S.W.3d at 22 (holding that the testimonies of a Department of Social Services' income maintenance supervisor and a cost recovery analyst as to Medicaid bills and payment were sufficient proof of moneys expended); *Newman,* 58 S.W.3d at 648 (holding that Medicaid billing and payment records, including computerized records, a check register denoting checks paid to providers, claim documentation, and recipient benefit notices made a *prima facie* case for recovery under section 473.398); *West,* 32

S.W.3d at 654–55 (holding that the circuit court erroneously excluded a billing statement, remittance advice, and a check register offered by the State and that the State's evidence, which also included the testimonies of a Department of Social Services' income maintenance caseworker and an estate recovery analyst, was sufficient); *Ragsdale,* 934 S.W.2d at 323–24 (holding that the testimony of a Department of Social Services' estate recovery analyst was sufficient, even if one were to disregard the billing statement, certification letter and check copies from the treasurer's office which were also in evidence).

The State also relies heavily on *In re Estate of Smith,* 300 S.W.3d 586 (Mo.App. 2009), for the proposition that its computerized records alone were sufficient to satisfy section 473.398.4. During the hearing in *Smith,* the State offered only what was described as "business records itemizing $10,003.66 in Medicaid payments to Decedent" to support its claim against the estate. *Id.* at 587. The decedent's son (who was also the personal representative) had filed a petition attempting to invoke the dependency exception to the State's claim, but he presented no evidence to support the exception at trial. *Id.* at 587–88. The circuit court denied the State's claim. *Id.* at 587. On appeal, the Eastern District of this court reversed, holding that the son failed to rebut the State's *prima facie* case. *Id.* at 588.

The State contends that the records in *Smith* were the same computerized records it offered in this case and that *Smith* stands for the proposition that these records are sufficient to satisfy section 473.398.4. Again, however, we do not find *Smith* to be dispositive of this issue. First, there is no indication as to what was included in the "business records itemizing $10,003.66 in Medicaid payments to Decedent." *Id.* at 587. We do not know

whether the records were limited to the type of computerized records that the State offered in this case or whether the records included a certified statement of the treasurer or his designee, check registers, or other proof of payment. Second, the opinion says that the State's documentary evidence was "unchallenged," *id.* at 587, so it appears that, unlike the Estate in this case, the son in *Smith* did not contest whether the business records showed the amount of Medicaid benefits expended on the decedent's behalf and were sufficient to establish the State's claim for recovery. Rather, the son challenged the State's claim by attempting to invoke an exception to the claim. *Id.* at 587–88. As noted, however, the son offered no evidence to support the exception and did not file a brief on appeal. *Id.* at 587 n. 1, 588. The issue in *Smith* was not the sufficiency of the State's evidence but, rather, the insufficiency of the rebuttal evidence. That is not the case here.

The State's computerized records—without testimony as to the meaning of the data contained therein or other evidence certifying that payment was made on Strayer's behalf—did not constitute competent and substantial evidence of payment. Because the State failed to prove its claim for reimbursement of Medicaid assistance funds against Strayer's estate, the circuit court did not err in denying the State's claim.

We, therefore, affirm the circuit court's judgment.

All concur.