**In re the ESTATE OF Jean E. NEWMAN, Deceased.**

**Missouri Department Of Social Services, Division of Medical Services, Appellant,**

v.

**Betty Schlotter, Personal Representative, Respondent.**

**No. WD 58906.**

Missouri Court of Appeals, Western District.

Sept. 11, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Oct. 30, 2001.

Jennifer L. Barth, Jefferson City, for Appellant.

David A. Yarger, Versailles, for Respondent.

Before EDWIN H. SMITH, P.J., and SMART and HOWARD, JJ.

EDWIN H. SMITH, Presiding Judge.

The Missouri Department of Social Services (DSS), Division of Medical Services (DMS), appeals from the judgment of the

Probate Division of the Circuit Court of Miller County for the respondent, Betty Schlotter, in her capacity as the personal representative of the Estate of Jean E. Newman, on its claim against the estate filed pursuant to § 473.398.1 [1] and § 473.399.2 for reimbursement of Medicaid assistance funds, which were expended on behalf of the decedent and her husband, Joseph W. Newman, who predeceased her.

The appellant raises two points on appeal. In Point I, it claims that the probate court erred in excluding from evidence, as inadmissible hearsay, Exhibits 2, 3, 4 and 5, consisting of the computer-generated records of the appellant, reflecting, *inter alia,* the Medicaid assistance funds that were expended on behalf of the Newmans, because in doing so the court erroneously declared and applied the law as to the foundation required for the admission of hearsay records under the business records exception to the hearsay rule found in § 490.680. In Point II, it claims that the probate court erred in finding for the respondent and against it on its claim because the court's judgment was against the weight of the evidence in that, but for the court's erroneous exclusion of Exhibits 2, 3, 4 and 5, as claimed in Point I, the appellant made a *prima facie* case for recovery on its claim.

We reverse and remand.

## Facts

Mrs. Newman died intestate on August 20, 1999. Letters of administration were granted by the Probate Division of the Circuit Court of Miller County, appointing the respondent the personal representative of the estate. On December 29, 1999, the appellant filed a claim against the estate, pursuant to § 473.398 and § 473.399, seeking reimbursement of $40,625.09 in Medic-aid assistance funds allegedly expended on behalf of the decedent and her husband. The estate contested the claim.

The appellant's claim was heard on July 18, 2000. Marsha Hickey, an employee of the DSS who was employed as an income maintenance supervisor for the Miller County Division of Family Services, was called by the DSS to testify. She testified that a recipient of public funds is identified in the agency's system by a departmental client number (DCN), as were the decedent and her husband. She further testified that the DCN tracks an individual from the Medicaid application process through approval and that it is uniformly used throughout the system and does not change. She also testified as to the procedure for applying for and receiving benefits; that she was the custodian of the records with respect thereto, which were kept in the normal course of the agency's business; and that she was familiar with the agency's record keeping procedures. Additionally, she explained that the information contained in the records was entered at or near the time it was received. As to the Newmans, she testified that they were approved for benefits and that their application documentation was included in Appellant's Exhibit 1, which was admitted into evidence.

James Lake, a cost recovery analyst for the DSS, was also called to testify on behalf of the appellant. He testified that he was responsible for putting together claim documentation for the recovery from estates of public assistance funds expended by the state. He brought with him to the hearing the claim documentation for both Mr. and Mrs. Newman, which consisted of billing statements, remittance advices, and check registers. Lake testified that he had reviewed the claim documentation for accuracy, including verifying the New-

1. All statutory references are to RSMo 2000, unless otherwise indicated.

mans' DCNs to insure that the information collected related only to their accounts, and that he was familiar with the Medicaid process from the time a claim was filed to when it was paid. He also testified that he was the custodian of the estate recovery records and claim documentation, which were electronically maintained in a computer according to the clients' DCNs, to which system he had access. Lake, after describing how Medicaid funds are paid to providers and that he had engaged in substantial training to understand the Medicaid claims process, testified as to the processing of such claims. He also testified that he was aware of how the claim documentation was prepared and the records were kept and that the information in the records was recorded at or near the time it was received.

Lake was asked to identify Appellant's Exhibit 2, which he identified as the claim documentation for Mrs. Newman. He testified that the billing statement contained in the exhibit was computer-generated from a secured computer system. When he was asked whether or not the information obtained from the system was entered at or near the time it was received, the respondent objected on the basis that Lake had no personal knowledge of the entries since he was not employed by the claimant at the time of their entry. The objection was sustained. Lake also testified as to the check register contained in the exhibit, explaining that it reflected the provider's name, number, and the checks issued to it for the specified pay period and that the check register can be cross-referenced with the remittance advice number. Exhibit 2 was then offered for admission, to which the respondent objected on the basis that Lake was not a custodian for the record because he had no personal knowledge of the information contained in the documents and, therefore, could not state whether or not the record was made at or near the time the information was received. The objection was sustained. An offer of proof was then made as to Exhibit 2. This scenario was then repeated for Exhibit 3, which was the claim documentation for Mr. Newman.

Lake was then asked to identify Exhibits 4 and 5, which he identified as recipient benefit notices to the Newmans. He explained that the notices are letters that are mailed once a quarter to Medicaid recipients, showing what medical services each provider billed to the DMS for the recipient, how much was paid on each claim, and the date on which it was paid. He was then asked whether it was the normal practice for these notices to be sent out by the DMS, to which the respondent objected on the basis that Lake was not a "sender-out of notices" and that they predated his involvement with the case. The objection was sustained and the appellant made an offer of proof. In the offer of proof, Lake testified that it was normal practice for the DMS to send the notices to Medicaid recipients and that he was familiar with how the notices are sent. He further testified that the notices have an address and a telephone number so that a recipient can contact the DMS if they have questions or concerns. He further explained that if a recipient does contact the DMS, it is recorded and entered into the computer system at the time the contact is made. In that regard, he verified that the records reflected that the Newmans had contacted the DMS as to the coverage for dental services. Exhibits 4 and 5 were then offered into evidence, to which the respondent objected. The objection was sustained.

At the conclusion of the appellant's evidence and without a motion from the respondent, judgment was summarily entered for the estate.

This appeal followed.

## Standard of Review

■ On appeal of a court-tried case, we will affirm the court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law. *Estate of Vickers,* 35 S.W.3d 851, 852 (Mo.App.2001) (citation omitted); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. *banc* 1976). In this case, there was no request for findings of fact and conclusions of law and "unless there is such a request and entry, the probate court is presumed to have made its findings in accordance with the decree entered and its judgment will be affirmed under any reasonable theory supported by the evidence." *Estate of Vickers,* 35 S.W.3d at 852; *see* Rule 73.01(c).[2]

## I.

■ In Point I, the appellant claims that the probate court erred in excluding from evidence, as inadmissible hearsay, Exhibits 2, 3, 4 and 5, consisting of the computer-generated "estate recovery" records of the appellant, reflecting, *inter alia,* the Medicaid assistance funds that were expended on behalf of the Newmans, because in doing so the court erroneously declared and applied the law as to the foundation required for the admissibility of hearsay records under the business records exception to the hearsay rule found in § 490.680. We agree.

■ Pursuant to § 473.398 and § 473.399, the appellant filed a claim against Mrs. Newman's estate for payment of moneys expended by the appellant on behalf of her and her husband. Section 473.398.1 reads:

Upon the death of a person, who has been a recipient of aid, assistance, care, services, or who has had moneys expended on his behalf by the department of health, department of social services, or the department of mental health, or by a county commission, the total amount paid to the decedent or expended upon his behalf after January 1, 1978, shall be a debt due the state or county, as the case may be, from the estate of the decedent. The debt shall be collected as provided by the probate code of Missouri, chapters 472, 473, 474 and 475, RSMo.

Section 473.399.2 provides that payments made to a spouse of a deceased recipient can be recovered by filing a claim against the estate of the deceased recipient. Section 473.398.4 specifically authorizes the recovery of Medicaid assistance funds paid, as defined in 42 U.S.C. § 1396 (1992). *Estate of West v. Moffatt,* 32 S.W.3d 648, 651 (Mo.App.2000). In that regard, § 473.398.4 reads, in pertinent part: "Claims consisting of moneys paid on the behalf of a recipient as defined in 42 U.S.C 1396 shall be allowed, except as provided in subsection 3 of this section, upon the showing by the claimant of proof of moneys expended." Thus, pursuant to the controlling law cited, the appellant was entitled to recover from Mrs. Newman's estate the Medicaid funds expended not only on her behalf, but her husband's, provided it could show that the moneys it claimed were actually expended on their behalf.

■ As to the proof to establish the payment of Medicaid assistance funds for purposes of § 473.398:

proof may include but is not limited to the following items which are deemed to indicated.

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise

be competent and substantial evidence of payment:

(1) Computerized records maintained by any governmental entity as described in subsection 1 of this section of a request for payment for services rendered to the recipient; and

(2) The certified statement of the treasurer or his designee that the payment was made.

§ 473.398.4. The language of the statute, "proof *may* include but is not limited to the following items," (emphasis added), indicates that other forms of proof, aside from the two specified in the statute, are permissible. *Dep't of Soc. Servs. v. Ragsdale*, 934 S.W.2d 322, 324 (Mo.App.1996). In our case, rather than employing the two expressed methods under the statute, the appellant chose to use Medicaid billing and payment records, Exhibits 2–5. However, the respondent objected to their admission on the basis that they were inadmissible hearsay. The appellant did not dispute the fact that they were hearsay, but argued that they were admissible under the business records exception to the hearsay rule, codified in § 490.680. Thus, the question for us, as framed by the parties, is whether the trial court properly declared and applied § 490.680 in determining that the exhibits in question were not admissible under the business records exception.

Section 490.680 reads:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Thus, the statute sets out three foundational requirements for the admission of a business record under the business records exception: (1) the custodian or other qualified witness testifies to its identity and the mode of its preparation; (2) the custodian or other qualified witness testifies that it was made in the regular course of business, at or near the time of the act, condition or event; and (3) in the opinion of the court, the sources of information, method and time of preparation justified its admission. Business records consisting of computer printouts are admissible under § 490.680, provided the business regularly employs electronic computer equipment to enter and store information and the three required foundational showings of the statute are satisfied with respect to the entries reflected thereon. *Estate of West*, 32 S.W.3d at 653; *Med. Shoppe Int'l, Inc. v. Mehra*, 882 S.W.2d 709, 713 (Mo. App.1994). In objecting to the admission of the records at trial, the respondent argued to the trial court that the first two required foundational showings had not been made. The trial court, apparently agreeing with the respondent, excluded the exhibits, resulting in a judgment for the respondent at the close of the appellant's evidence.

As to the first foundational showing for admission of a business record under the exception, the respondent argued, *inter alia*, at trial, in successfully excluding the records in question, that Lake was not a "custodian or other qualified witness" for purposes of establishing the identity and mode of preparation of the exhibits, and that they were made in the regular course of business, at or near the time of the acts recorded, because the statute required him to be employed at the time the electronic entries comprising the record were made or to have personal knowledge of their sources. In so arguing, the respondent misconstrues the statute's requirements as

to who can serve as a sponsoring witness for the admission of the record under the exception.

■ The statute permits either the testimony of the custodian of the record offered or any other qualified witness to establish the identity of the record and its mode of preparation, and that it was made in the regular course of business, at or near the time of the act. As to the sponsoring witness for the admission of a business record, the statute does not require that he or she be employed at the time the electronic entries comprising the record were made or had personal knowledge of their origins. *State ex rel. Hobbs v. Tuckness,* 949 S.W.2d 651, 654 (Mo.App.1997); *Rouse Co. of Mo., Inc. v. Justin's Inc.,* 883 S.W.2d 525, 530 (Mo.App.1994); *Med. Shoppe Int'l, Inc.,* 882 S.W.2d at 713. The business records exception allows the admission of evidence without the necessity of producing as witnesses those individuals who made the entries of record. *Med. Shoppe Int'l, Inc.,* 882 S.W.2d at 713. All that is required under the statute as to the sponsoring witness is that he or she has "sufficient knowledge of the business operation and methods of keeping records of the business to give the records probity." *Estate of West,* 32 S.W.3d at 653 (citation omitted). In that regard, the record here reflects that Lake testified that he was the custodian of the records in question. He also testified extensively as to his knowledge of the business operation and methods of keeping records of the DMS at all relevant times with respect to the records. As such, to the extent the trial court, in excluding the exhibits in question, relied on the fact that Lake was not employed by the appellant when certain of the entries comprising the exhibits were made or did not have personal knowledge of their origins, it erred.

■ As to the second foundational showing for admission of the records, the respondent argued in support of her objection at trial to their admission, that they were not made in the regular course of business, at or near the time of the acts recorded, in that they were prepared after the fact for the sole purpose of litigation. In arguing as she did, the respondent misconstrued this foundational requirement for the admission of the records. In her argument, the respondent is contending that the printout itself had to be made in the regular course of business, at or near the time of the act or event recorded. This is not the interpretation that has been given by our courts to the statute with respect to computer records. What is required is that the entries comprising the printouts of the records have to have been made in the regular course of business, at or near the time of the act. *Id.* at 653; *Med. Shoppe Int'l, Inc.,* 882 S.W.2d at 713. Here, the record reflects that Lake testified to that fact. Thus, to the extent the trial court excluded the appellant's exhibits on the basis that it believed, under the statute, that the printouts comprising the exhibits did not meet the second foundational requirement for admission of business records under the exception, it erred.

Having resolved the first two foundational requirements for admission in the appellant's favor, we now turn to the third, whether "in the opinion of the court, the sources of information, method and time of preparation were such as to justify [the record's] admission." § 490.680. The appellant contends that having met the first two foundational requirements and in light of there being nothing in the record to suggest that its estate recovery records were not trustworthy, it was an abuse of discretion for the trial court to exclude them on the basis that the third foundational requirement for admission was not satisfied. For her part, the respondent in her brief

only speaks to the relevancy of the records and makes no further argument to suggest that the records were not trustworthy due to their source or mode of preparation. In this regard, the record would also reflect that the respondent's only objections below to the admission of the records went to the first two foundational requirements.

Having carefully reviewed the record on appeal, there is nothing to suggest that the records, with respect to the source of the information contained therein and their preparation, were not trustworthy. Lake testified extensively as to the mode of the computer entries and their sources and the fact that they were matched to the Newmans' accounts using their DCNs. DMS records employing the same sources and mode of preparation as those in dispute here have previously been found by our courts to be trustworthy, justifying their admission, unless there is a showing to the contrary. *Estate of West*, 32 S.W.3d at 654; *Pierce v. State of Missouri Dep't of Soc. Servs.*, 969 S.W.2d 814, 818 (Mo.App. 1998). Other than to argue relevancy, the respondent offers nothing of record to demonstrate that the records were not trustworthy, and we can find none, such that to the extent that the trial court relied on the appellant's purported failure to satisfy the third foundational requirement for admission of business records in excluding the appellant's exhibits, it erred.

From the record, it is clear that the trial court erroneously declared and applied the law of § 490.680 in excluding the appellant's Exhibits 2–5 and, therefore, erred in doing so.

## II.

In Point II, the appellant claims that the probate court erred in finding for the respondent and against it on its claim because the court's judgment was against the weight of the evidence in that, but for the court's erroneous exclusion of Exhibits 2, 3, 4 and 5, as claimed in Point I, it made a *prima facie* case for recovery on its claim which was not rebutted, entitling it to succeed on its claim. While we would agree that the appellant's excluded exhibits should have been admitted and were sufficient to make a *prima facie* case for recovery, we disagree that it is entitled to a judgment of this court approving its claim.

If the records in question had been admitted as warranted, they established that the amounts claimed by the appellant had been expended on behalf of the Newmans. Such records have been found previously by our courts to be sufficient to make a *prima facie* case for recovery under § 473.398. *See Estate of West*, 32 S.W.3d at 654–55; *Estate of Vickers*, 35 S.W.3d at 853–54; *Pierce*, 969 S.W.2d at 818; *Ragsdale*, 934 S.W.2d at 323–24. Hence, unless the appellant's *prima facie* case is rebutted, it would be entitled to judgment.

Inasmuch as the record reflects that judgment was entered for the respondent upon the completion of the appellant's evidence, although no motion was made by the respondent to that effect, we must infer that the probate court, in finding for the respondent, found that the appellant had not made a *prima facie* case. As a result, the respondent was never afforded an opportunity to offer any evidence in rebuttal. Hence, having found that the appellant's exhibits were improperly excluded and that the same established a *prima facie* case for recovery, we reverse and remand to the probate court for the sole purpose of conducting a further hearing to allow the respondent an opportunity to rebut the appellant's *prima facie* case.

## Conclusion

The judgment of the circuit court for the respondent on the appellant's claim for

recovery of Medicaid benefits against the respondent estate, under §§ 473.398 and 473.399, is reversed and the cause remanded for further proceedings in accordance with this opinion.

SMART and HOWARD, JJ., concur.